Case number five for argument today is McDaniel against the Wisconsin Department of Corrections. Ms. Smith. May it please the court. My name is Johanna Smith and I represent plaintiff appellant Carl Joseph McDaniel. I at this point respectfully request to reserve three minutes for rebuttal. This state of Wisconsin has engaged in a perennial bait and switch with respect to such that he is presently housed in a dry cell that is a cell without a toilet. They have given and taken away and then stored his wheelchair restriction. Ms. Smith, what is the current status of proceedings in the district court? The current status is that motion for summary judgment was fully grieved as of February 24th of this year and that motion has not yet been ruled on by the the district court any day may decide the case on the merits. Yes, Judge Easterbrook, because Mr. McDaniel's situation has only deteriorated and the facts of his lack of accommodations have only gotten worse since the preliminary injunction. We have to, in dealing with preliminary injunctive relief, we have to deal with the record as it comes to us, which is before the close of the record in the district court. The district judge may know more. One of the things that struck me about the record as it comes to us is the absence of any expert medical evidence and perhaps that can be introduced in the district court. Trying to scoop the district court, which has a better and more recent record and is about to rule, well, I just wonder whether that isn't problematic. Well, the evidence that was before the district court did not support the district court's determination with respect to the wheelchair restriction, the toilet access, or the no upper bunk restriction that Mr. McDaniel sought. With respect to toilet access, the district court erroneously decided to not reconsider Mr. McDaniel's request for meaningful toilet access at Oshkosh, instead relying on the Eastern District of Wisconsin's determination in another case brought by Mr. McDaniel against the Wisconsin Department of Corrections, but with respect to other correctional institutions in that setting. The district court determined that because Mr. McDaniel's incontinence-related disability had not deteriorated since that determination, it did not need to engage in its own independent analysis. I'm sorry, go ahead and finish your thought. Mr. McDaniel did submit sufficient evidence that his condition had deteriorated. In the appendix at page 59, he explains that he's experienced substantial amounts of bleeding diaper rashes because of his inability to have meaningful toilet access, and he also explained that he's experienced multiple stress-induced angina attacks while at Oshkosh, and so it was improper. Is any of this supported by medical evidence? The medical evidence in the record... Or is it just his opinion? There is medical evidence in the record that Mr. McDaniel does require meaningful access to and regular and immediate access to a toilet to practice timed voiding. Dr. Murphy, Dr. Murphy... The nurse practitioner, Bowens, who thinks that the department is doing enough, and as I understand it, McDaniel proffered evidence from a number of other professionals, Dr. Nathaniel Brooks, Dr. Choi, Dr. Laura Maurer-Setter, Dr. John Schomburg. I don't see where the district court really grapples with their opinions, so I'm not sure this is a case without other experts. I just wonder, did the district court look at that? Your interpretation is exactly right, Judge Wood. The district court really didn't grapple with that evidence that Mr. McDaniel propounded. The district court instead conclusively determined that, well, the nurse practitioner said he doesn't need these accommodations, and therefore that's sufficient evidence that Mr. McDaniel doesn't need this toilet access, but... In other words, this isn't just Mr. McDaniel standing up saying, I need this. There were people with MD after their name who were of that opinion. Exactly, exactly. Dr. Maurer-Setter has called timed voiding essential. Dr. Schomburg tested, or in his medical records, explained that Mr. McDaniel would benefit from immediate access to adjacent restroom facilities. That's at appendix page 17. The district court failed to grapple with any of this and instead relied only on the Wisconsin Department of Corrections assertion that the catheters and adult diapers, which lead to the bleeding diaper rashes that Mr. McDaniel has experienced, were sufficient. And that's in his medical records from the prison, isn't it? The bleeding diaper rash? I believe so, yes, that he's been treated for that at health services. But these simply aren't reasonable accommodations because they don't provide him with access to the same services, namely toilet services, at Oshkosh that other non-disabled inmates have access to. Before your time runs out, can I ask you, I got a little confused looking at the record about the top bunk removal. I thought there was a little bit of evidence, and I gather the problem is that he's a rather large person and not able to maneuver himself well, hence the wheelchair need and all sorts of other things, but that there just isn't enough space between the lower bunk and the top bunk for him to safely get in, which is why he's been breaking all these teeth and so on. That's largely correct. He has a number of conditions, including spinal stenosis, degenerative joint disease, that effectively causes his body to be sort of frozen and makes it difficult for him to maneuver. And that evidence is in the record, appendix page 9 and appendix page 40. There's also evidence in the record that he's been given a bed wedge, and that's at appendix page 101, and this causes his head to be actually a little bit closer. This is an accommodation for his COPD that helps him sleep better at night, but that causes his head to be even closer to the top bunk, such that when he does sit up in the middle of the night because of an incontinence episode or because of a PTSD episode arising from his military service, he often does strike his head. And that's why Dr. Brooks, in appendix page 31, specifically recommended placing him in a bunk where he is not repeatedly striking his head and his neck. Let me ask you a question about what relevance in your view, if any, is the prior related case, the case 17-14-93. And the reason I ask you that is because the district court seemed to me to say these same kinds of issues, these same kinds of claims have been litigated before. And what we basically have here is because he's moved from most recently New Lisbon to Oshkosh, he has renewed his requests at the new facility, Oshkosh. But the district court then saw no kind of updated evidence, seeing any need to deviate from the prior decision in 14-93. The district court could certainly take judicial notice of the fact that Mr. McDaniel has filed another similar case against the Wisconsin Department of Corrections, which is currently on appeal to this court. But where the district court erred is it went a step further. It then said it wasn't just that it found that prior case instructive, it erred when it then declined to engage with the substantial analysis and the substantial evidence that Mr. McDaniel supplied in this case that was not perfectly identical with the evidence in the prior case. He did show that his condition had deteriorated and he did show that he wasn't able to practice the time voiding that at least three of his independent specialist medical providers agree is essential. And that medical evidence that you were referring to in your exchange with Judge Wood, is that part of the record in this case or is it part of 17-14-93? It's all included in the record in this case. Some of it was not include part of the record in the prior case, specifically Dr. Murphy's medical analysis, which is an appendix at page 47. Her, she saw Mr. McDaniel in February of 2021, which was after he was moved to Oshkosh. And I see my time is running short and I'd like to request to reserve the remaining time for a vote. Thank you, Ms. Smith. Certainly. Mr. Koski. May it please the court, Clay Koski appearing on behalf of the Wisconsin Department of Corrections and I have two points this morning. The first is that the district judge did not err in denying the preliminary injunction. And the second is that this court must be mindful of its jurisdiction as we have a fully brief summary judgment motion pending in the district court. Proceedings there have not been stayed. So as Judge Easterbrook pointed out, this court shouldn't be trying to scoop the district court when there is much more evidence pending before that court. I don't think it's a scoop. I mean, obviously we have jurisdiction under 1292A1. This was a, it's an appeal from a denial of a preliminary injunction. That's fine. Now, sometimes events overtake and the preliminary injunction wipes out because there's a final judgment of some kind. Maybe summary judgment, maybe summary judgment is denied. We don't know. I mean, the district court will evaluate the papers and if summary judgment is denied, then maybe nobody's scooping and the need for interim measures, as they are sometimes called, is perfectly sound for this court's jurisdiction. So I'm not sure, you know, how much crystal ball gazing we really should be doing with respect to the district court. Wouldn't be the first time. If district court issues an opinion this afternoon, then I guess we'll find out. But if it doesn't, we need to address the We think that, number one, there are three forms of relief requested here. Permanent wheelchair access, top bunk removal, and single wet cell. With regard to the wheelchair, we pointed out- Before you go, I want you to pick up right where you were, but I want to just make sure, has either party said anything to the district court about, hey, we're going up on appeal on the preliminary injunction? And has the district court said, well, all right, I'll hold off on the summary judgment or? The district court would become aware of it because of the notice of no. That's a little surprising to me. It seems quite unfair to the district judge to ask him to be rummaging around in ordinary notices. Would it really be that hard to tell the judge that this is up on appeal? Yeah, it just, because you stop short in your red brief, at least as I read it. You don't argue there's a jurisdictional problem. You just say, hey, if there's a judgment entered during this appeal in the district court, it may moot these issues. Yeah, absolutely. But have the parties said anything to the district court? No, we don't think it's necessary because like I said, the district judge knows this case is pending on appeal. Here's an oddity I want to point out though. Why do you say that with such confidence? Because notice of appeal was filed. A case was docketed in this court. The district judge receives notice of that through the ECF system. So the district judge is fully aware of it through that system. An oddity here is that there was a motion for reconsideration. My assumption is that judges are not fully aware of everything filed in every case. That's a fair assumption. Notice may be sent to chambers, may be rooted, may be blocked, may be passed on, may be overlooked. Some information from counsel about the status of appeals would, I think, be very helpful to district judges. And I'm surprised that lawyers for both sides think otherwise. You make a good point, Judge Easterbrook, that no party in this case has informed the district judge of these proceedings other than the filing of the notice of appeal, the docketing of the case. There is a reconsideration motion that's pending before the district judge that hasn't been ruled on, a Rule 6. Reconsideration of what? Of the This was the so-called Rule 6. Not at the same time it's pending on appeal. There is a rule that only one court can have jurisdiction of a subject at a time. That's right. You weren't suggesting that the motion suspended the finality of the preliminary injunction and so we don't have jurisdiction. No. All right. So if we have jurisdiction, the district judge does not. The only thing pending before the district judge is the motion for summary judgment. The district judge does have a motion for reconsideration pending before it that Mr. No, only one court at a time can have jurisdiction over the preliminary injunction. With regard to the merits, Judge Scott, you asked me to pick up there the wheelchair restriction. Mr. McDaniel has a wheelchair. It's been in place since November of last year. It will be in place at least through November of this year. It's not like the day that that wheelchair restriction ends, the wheelchair is taken away. He will be evaluated in the weeks leading up to that to determine whether the wheelchair should continue. As to that, I think actually the wheelchair is maybe the least interesting of the three accommodations that he would like, but he does make a pretty powerful argument about the voluntary cessation doctrine because the department is taking the position that this isn't really a permanent need of his, excuse me, and he thinks it is. And so the injunction that he's looking for would give him some assurance that he'll always have a wheelchair to get to the health services unit or wherever else in the prison he is supposed to go. That's right. We've just simply pointed this out. There is some pretty awful testimony about him falling down and not really being able to get there. I agree that there is some in the record. All right. We have a statement from Dr. Murphy at the Institute of Urology that McDaniel, and this is Murphy's word, needs timed voiding and free access to a toilet. Perhaps you could refresh my recollection of what the district judge said about that. The district judge didn't address Dr. Murphy. Didn't say anything about that. Not a word. Isn't that a problem? We don't think so because some of this evidence, including Dr. Murphy and others, is quite dated. We're talking about quite dated. We're talking about more current evidence. Was it lodged in this case or was it in 17-1493? I believe Murphy is only lodged in the other case. All right. Ms. Smith said it was in this case too, so we're going to have to find that out. I could be wrong about that. The overlap of the two cases gets confused. It seems to me because he's experienced these medical issues for a while. He was trying to raise them at Columbia and what, New Lisbon? Correct. Okay. And then he's at Oshkosh. They haven't gone away, so he's raising them anew. What is in this record and what is not in this record is quite confusing to me because as opposed to what's in 1493. Right. So there's overlap between the two cases. Judge Wood, you talked about Drs. Choi, Brooks, Morse. But what are we supposed to do? Are we supposed to go review the 1493 record? No. You should not review the 1493 record. You should look at the record in this case. But his medical condition has stayed the same or perhaps deteriorated as the state of Wisconsin has shuffled him around from one institution to the next, to the next. So just because something was done earlier doesn't mean it's necessarily irrelevant. I mean, we certainly need to know what was profited in this case. I agree with that. And I'll point out that some of these other consults with outside specialists were dealing with a tumor issue he had. He had a non-cancerous tumor removed. And some of those specialists were consulting about that issue. But they were opining about his need for the removal of the top bunk, which are the two things that seem to be front and center. I mean, the state spends a lot of time talking about the wheelchair. But as I say, I think really that it's the timed voiding in the top bunk that are the focus of his concern. We acknowledge that some doctors have in the past said time voiding is something that he would benefit from. Now is it the state of Wisconsin's position that he can change his own diapers? Correct. He can do that. And then he can get access to a shower as well. Could benefit from. What Murphy's note says is that it's something he needs. And then Murphy's got some mealy-mouthed language about doing something, let's see, request a single cell if possible. Which is what we cited in our brief. I know. But the district court didn't discuss this at all. That's right. And it is a problem. Murphy may not be consistent in support of McDaniel, but you would think it's something a judge would want to discuss. And especially if it was something the state chose to discuss. I take it that you were discussing only things that are in this record. Correct. That's correct. And so I want to emphasize. So is Murphy's note in this record or not? Yes, it is. Based on what you just said about if possible, that is in the record, because that is what we cited in our brief at pages. All right. It's in this record. It is in this record now, even if it wasn't before. With regard to the accommodations that were provided, I want to emphasize that we think they are sufficient. He was given access to a urinal, catheters, which he used, and the adult diapers, which Judge Wood, you already mentioned. He complains about using those But the district court never grapples with the fact that the doctors think that for a man of his various ailments, this timed voiding is actually the right way to manage the problem. It's not throwing some diapers at him that he winds up with terrible rashes from. Keep in mind, I'll finish my, just answer your question. I see my time is out. Keep in mind that the cell he was moved to, he was moved from 007 to 0080. 0080 had a toilet. And that's what the district judge was looking at. Did he was looking at access to the toilet. And a competing user. Yeah, there was another user. That's that's right. There was another user. Thank you for your time, Your Honors. We ask to affirm. All right. Thank you, Mr. Kowalski. Anything further, Ms. Smith? Yes, Your Honor. Two points on rebuttal. First, this court does unquestionably have jurisdiction with respect to the reconsideration motion that my opposing counsel referenced. Mr. McDaniel withdrew that motion in December of last year, and the docket at the district court now reflects that it has been withdrawn. In fact, there's a full strikethrough on the online docket showing that it's no longer relevant and before the district court. But second, as Your Honors noted in your questioning to my opposing counsel, the district court improperly ignored the substantial evidence that was before it. Dr. Murphy examined Mr. McDaniel only eight months before the district court entered its order denying the preliminary injunction. That was new evidence. That was evidence showing that he did need timed voiding. And that was only echoing the other medical evidence that Mr. McDaniel submitted, which called time voiding essential. And that's from Dr. Mar Setter, as well as Dr. Schomburg's records showing that Mr. McDaniel would benefit from this kind of knowledge. Yes, yes, Your Honor. That's appendix pages 47, 21, 24 and 17. Moreover, the idea that oh, and I see that my time has expired and we respectfully ask that this court reverse the decision of the district court. Thank you very much, counsel. The case is taken under advisement.